**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**SHERMAN MATLOCK**                                                                                          **PLAINTIFF**

**vs.**                                                            **CIVIL ACTION No.: 3:20-CV-381-HTW-LGI**

**DISTRICT ATTORNEY JOHN
K. BRAMLETT, JR. in his individual
and official capacity; and JOHN DOES 1-5**                                                **DEFENDANTS**

**<u>ORDER</u>**

The lawsuit *sub judice* arises out of plaintiff Sherman Matlock's (hereinafter referred to as

"Matlock") November 20, 2018, indictment by a Circuit Court of Madison County, Mississippi,

grand jury for voter fraud and voting by an unqualified person, in violation of MISS. CODE ANN.

§§ 23-15-753[1] and 23-15-19[2]. On May 3, 2019, the Madison County, Mississippi District

---

[1] (1) Any person who willfully, unlawfully and feloniously procures, seeks to procure, or seeks to influence the vote of any person voting by absentee ballot, by the payment of money, the promise of payment of money, or by the delivery of any other item of value or promise to give the voter any item of value, or by promising or giving the voter any favor or reward in an effort to influence his vote, or any person who aids, abets, assists, encourages, helps, or causes any person voting an absentee ballot to violate any provision of law pertaining to absentee voting, or any person who sells his vote for money, favor, or reward, has been paid or promised money, a reward, a favor or favors, or any other item of value, or any person who shall willfully swear falsely to any affidavit provided for in Sections 23-15-621 through 23-15-735, shall be guilty of the crime of "vote fraud" and, upon conviction, shall be sentenced to pay a fine of not less than Five Hundred Dollars ($500.00) nor more than Five Thousand Dollars ($5,000.00), or by imprisonment in the county jail for no more than one (1) year, or by both fine and imprisonment, or by being sentenced to the State Penitentiary for not less than one (1) year nor more than five (5) years.

(2) It shall be unlawful for any person who pays or compensates another person for assisting voters in marking their absentee ballots to base the pay or compensation on the number of absentee voters assisted or the number of absentee ballots cast by persons who have received the assistance. Any person who violates this section, upon conviction shall, be fined not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or imprisoned in the Penitentiary not less than one (1) year nor more than five (5) years, or both.

MISS. CODE. ANN. § 23-15-753 (West)

[2] Any person who has been convicted of vote fraud or any crime listed in Section 241, Mississippi Constitution of 1890, such crimes defined as "disenfranchising," shall not be registered, or if registered the name of the person shall be removed from the Statewide Elections Management System by the registrar or the election commissioners of the county of his or her residence. Whenever any person shall be convicted in the circuit court of his or her county of a disenfranchising crime, the county registrar shall thereupon remove his or her name from the Statewide Elections Management System; and whenever any person shall be convicted of a disenfranchising crime in any other court of any county, the presiding judge of the court shall, on demand, certify the fact in writing to the registrar of the county in which the voter resides, who shall thereupon remove the name of the person from the Statewide Elections Management System and retain the certificate as a record of his or her office.

MISS. CODE. ANN. § 23-15-19 (West)

Attorney's Office filed a Motion to *Nolle Prosequi*[3] Indictment in the Circuit Court of Madison County, Mississippi, which was granted on the same day.

On June 4, 2020, Matlock filed his complaint in this action, asserting claims under Title 42 U.S.C. § 1983[4] and state law, namely malicious prosecution and false imprisonment, against two (2) defendants: District Attorney John K. Bramlett, Jr. (hereinafter referred to as "DA Bramlett") and Max Mayes. Matlock asserted the following: that both defendants had ignored exculpatory information demonstrating that he, Matlock, was not guilty of the charges; that the actions of the defendants constituted an unlawful seizure; that the Madison County District Attorney's Office had a policy, practice or custom of causing such seizures; and that the defendants' action constituted malicious prosecution.

Matlock seeks a judgment granting him declaratory relief, prospective injunctive relief, and nominal, compensatory, and punitive damages.

On October 7, 2020, District Attorney Bramlett moved this court to dismiss all of Matlock's claims against him, Matlock's federal claims against Bramlett in his official capacity,

---

[3] *nolle prosequi* (nahl-ee prahs-ə-kwI) n. [Latin "not to wish to prosecute"] (17c) 1. A legal notice that a lawsuit or prosecution has been abandoned. 2. A docket entry showing that the plaintiff or the prosecution has abandoned the action. — Often shortened to *nolle*. — Also termed (in slang) no-paper.
NOLLE PROSEQUI, Black's Law Dictionary (11th ed. 2019)
[4] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C.A. § 1983 (West)

and individual capacity. Bramlett relies upon the Eleventh Amendment[5]; prosecutorial immunity; and the statute of limitations of the immunities provided by the Mississippi Tort Claims Act.

After receiving Bramlett's Motion to Dismiss, Matlock filed an Amended Complaint on October 21, 2020. Matlock's Amended Complaint basically maintains the same allegations of the original complaint, but Matlock makes three changes: first, he eliminated his individual capacity claims against DA Bramlett altogether; secondly, Matlock refined his request for prospective injunctive relief by asking this court to "prevent the State from continuing to violate the constitutional rights of African Americans"; and thirdly, he abandoned his state law claims against DA Bramlett. It thus appears that in his operative complaint, Plaintiff Matlock now asserts against DA Bramlett and Max Mayes only a federal law claim for prospective injunctive relief.

## I.     ANALYSIS

### a.  *Standard of Review Fed. R. Civ. P. 12(b)(1)*

Dismissal of a case is proper under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss*., 143 F.3d 1006, 1010 (5th Cir. 1998). When considering a motion to dismiss for lack of subject matter jurisdiction, this court must construe the allegations of the complaint favorably to the pleader. *Spector v. L Q Motor Inns, Inc*., 517 F.2d 278, 281 (5th Cir. 1975). The party who seeks to invoke federal court jurisdiction has the burden to demonstrate that subject matter jurisdiction actually exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any

---

[5] The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI

attack on the merits." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citation omitted). Where a defendant is entitled to Eleventh Amendment Immunity, the court lacks subject matter jurisdiction over a Plaintiff's claims. *See Mahogany v. La. State Sup. Ct*., 262 Fed.Appx. 636, 636 (5th Cir. 2008) (per curiam) ("A federal district court lacks subject matter jurisdiction where the named defendants are protected by Eleventh Amendment immunity.").

      *b.  Standard of Review Fed. R. Civ. P. 12(b)(6)*

      When considering a motion to dismiss pursuant to Rule 12(b)(6), this court must dismiss a claim where a plaintiff has not alleged enough facts to state a claim for relief that is plausible on its face. *See Shakeri v. ADT Sec. Servs., Inc*., 816 F.3d 283, 290 (5th Cir. 2016); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under Rule 12(b)(6), this court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *See Shakeri*, 816 F.3d at 290.

      "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual contentions, the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quotation omitted).

      "[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all the defendants, while providing no factual basis to distinguish their conduct. *Del Castillo v. PMI Holdings N. Am. Inc*., No., 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015). As to each defendant sued in his or her individual

capacity, a plaintiff must allege how that defendant was personally involved in or had direct responsibility for the incidents that caused the plaintiff's alleged injury. *See id.*

      *c. Eleventh Amendment Immunity*

Matlock's Amended Complaint appears to name DA Bramlett in his official capacity only. Any monetary damages against DA Bramlett in his official capacity would violate Eleventh Amendment immunity as envisioned by the United States Constitution. *See Clay v. Texas Women's Univ.*, 728 F.2d 714, 715 (5th Cir. 1984) ("The [E]leventh [A]mendment clearly interposes a jurisdictional bar to suits against a state by private parties who seek monetary relief from the state").

The United States Supreme Court, in *Ex Parte Young*, carved out a narrow exception to Eleventh Amendment immunity, allowing a plaintiff to seek prospective injunctive or declaratory relief against a state official to remedy an ongoing violation of federal law. *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). "This exception strips the individual state actor of immunity and allows a private citizen to sue that individual in federal court for prospective injunctive relief based on allegations that the actor violated federal law." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011). A state official can be sued in his or her official capacity for injunctive relief under [Title 42 U.S.C.] § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985) (citing *Ex parte Young*, 209 U.S. at 159–160).

For this court to apply *Ex Parte Young*, Matlock, through his Amended Complaint, must allege that DA Bramlett is continuing to violate federal law, not simply that he has done so in the past. *See Green v. Mansour*, 474 U.S. 64, 71–73, 106 S.Ct. 423, 427–29, 88 L.Ed.2d 371 (1985). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to

suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002).

In the lawsuit at bar, Matlock seeks redress for alleged past actions of DA Bramlett, namely: ignoring exculpatory information demonstrating that Matlock was not guilty of the charges; that DA Bramlett had unlawfully seized Matlock; that the Madison County District Attorney's Office, headed by DA Bramlett, had a policy, practice or custom of causing such seizures; and that DA Bramlett committed malicious prosecution against Matlock. All the actions of which Matlock complains, predate this lawsuit. DA Bramlett moved to *nolle prosequi* Matlock's indictment on May 3, 2019, over one year before Matlock filed the lawsuit *sub judice*. Matlock has alleged no ongoing violations of federal law by DA Bramlett – a mandatory pleading before this court can find that *Ex Parte Young* applies. Accordingly, this court finds that the *Ex Parte Young* exception does not apply to the lawsuit *sub judice*.

    d.  Standing

Article III of the United States Constitution limits this federal court's jurisdiction to actual cases or controversies, which require a showing that Matlock has standing to bring the claims in question. *Flast v. Cohen*, 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The United States Supreme Court found that the "irreducible constitutional minimum" of standing consists of three elements: (1) Matlock must have suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of DA Bramlett; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)(citations omitted).

The United States Court of Appeals for the Fifth Circuit has made it clear that "to have standing to sue under Article III, a plaintiff must allege" that the three constitutional requirements, quoted above, are met. *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019)(emphasis added).

The United States Supreme Court has also been clear that a plaintiff may lack standing to seek injunctive or declaratory relief even where he has standing to sue for damages. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–03, 103 S. Ct. 1660, (1983). Although *Lyons* dealt with injunctive relief, the Fifth Circuit has held that its reasoning applies equally to declaratory relief. *See Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992).

Matlock, because he is seeking injunctive or declaratory relief, must allege that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct, and the injury or threat of injury must be "real and immediate," not "conjectural" or "hypothetical." *O'Shea v. Littleton*, 414 U.S. 488, 496-97, 94 S. Ct. 669, 676, 38 L.Ed.2d 674 (1974). Moreover, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects. *Id.*

Matlock's Amended Complaint seeks injunctive or declaratory relief and, thus, he must satisfy the jurisprudence above cited. As this court stated above, Matlock's Amended Complaint alleges past actions, not continuing violations or the real and immediate threat of injury. Matlock also fails to allege any continuing or present adverse effect from DA Bramlett's alleged action or inaction. Accordingly, Matlock lacks standing to bring the instant lawsuit.

*e.  Mootness*

Closely related to standing is the doctrine of mootness. Mootness is the doctrine of standing set in a time frame. *Center for Individual Freedmon v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006 (quoting Geraghty, 445 U.S. at 397). In *Whitfield v. City of Ridgeland*, 876 F. Supp.2d 779 (S.D. Miss. 2012), United States District Court Judge Tom Lee said "the mootness doctrine . . . 'requires that the controversy posed by the plaintiff's complaint be live not only at the time plaintiff files the complaint, but also throughout the litigation process.'" *Whitfield*, 876 F. Supp.2d at 785 (citing *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990)) (internal quotations omitted). "As with standing, an action becomes moot unless there remains throughout the litigation a real and immediate threat of repeated injury." *Id*.

A real and immediate threat of repeated injury is crucial for maintaining a personal stake in the outcome of the litigation as well as determining the applicability of the capable of repetition, yet evading review exception to the mootness doctrine.

> The capable-of-repetition exception applies only in exceptional situations where the following two (2) circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. . .

*Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal quotation marks, citations and brackets omitted). The "capable of repetition, yet evading review" doctrine "applies . . . only when repetition is likely to embroil the same parties to the dispute." *Robinson v. City of Chicago*, 868 F.2d 959, 967 (7th Cir. 1989).

Matlock's Amended Complaint, as stated above, alleges only past conduct committed by DA Bramlett. Matlock fails to allege how or why he would be potentially exposed to re-indictment for voter fraud or voting by an unqualified person. Accordingly, this lawsuit must be deemed moot.

### f.   Federal Rule of Civil Procedure 65

Fed. R. Civ. P. 65 sets forth the requirements for every order granting an injunction:

(d) Contents and Scope of Every Injunction and Restraining Order.

> (1) Contents. Every order granting an injunction and every restraining order must:
>
>> (A) state the reasons why it issued;
>>
>> (B) state its terms specifically; and
>>
>> (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.

Fed. R. Civ. P. 65.

The United States Circuit Court of Appeals for the Fifth Circuit reiterated that, "[a] general injunction which in essence orders a defendant to obey the law is not permitted. This command of specificity is a reflection of the seriousness of the consequences which may flow from a violation of an injunctive order." *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369 (5th Cir. 1981).

Matlock's Amended Complaint asks this court to "[a]ward appropriate equitable relief[,] including but not limited to prospective injunctive relief, declaratory and other injunctive remedies to prevent the State from continuing to violate the constitutional rights of African Americans." He seeks no injunction or declaratory relief specific to himself. Moreover, Matlock's Amended Complaint contains merely a request for "[a] general injunction which in essence orders a defendant to obey the law [which] is not permitted." *Id.* Accordingly, his claim for injunctive or declaratory relief must be dismissed.

### g.   Monetary Damages

The Eleventh Amendment of the United States Constitution incorporates common law principles of sovereign immunity and confirms that the judicial power established by Article III does not confer jurisdiction over suits against non-consenting states. *Seminole Tribe of Fla. v.*

*Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L.Ed. 2d 252 (1996). "The very object and purpose of the [Eleventh] Amendment [is] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Ex parte Ayers*, 123 U.S. 443, 508, 8 S. Ct. 164, 31 L.Ed. 216 (1887). "The [Eleventh] Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed. 2d 605 (1993).

It is "well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed. 2d 662 (1974). Suits against state agencies or officials which ultimately seek monetary recovery from state funds are barred by the Eleventh Amendment. *Id*. Thus, state officials are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed. 2d 114 (1985). The reasoning behind this well-established principle is that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Id*. (quoting *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed. 2d 878 (1985)). States, their arms, and officials are not "persons" who can be held liable under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed. 2d 45 (1989).

Mississippi's district attorney offices are primarily state-funded, and the district attorneys' authority extends to statewide concerns. *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991). As a result, the Fifth Circuit has held that Mississippi district attorneys are state officials entitled to Eleventh Amendment immunity. *Id*.; *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999); *Brooks v. George Cty., Miss*., 84 F.3d 157, 168 (5th

Cir. 1996). *See also Brown v. Harrison County Circuit Court*, 2007 WL 1306422, *2 (S.D. Miss. Apr. 30, 2007) ("Additionally, the District Attorney's Office does not enjoy a separate legal existence under Mississippi state law and, therefore, the Plaintiff cannot pursue a cause of action against it.").

The United States Congress may abrogate state sovereign immunity when it unequivocally intends to do so and, in its abrogation, acts pursuant to a valid grant of constitutional authority. *Tennessee v. Lane*, 541 U.S. 509, 509-10, 124S.Ct. 1978, 158 L.Ed. 25 820 (2004); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed. 2d 866 (2001).

Section 1983 has not abrogated Eleventh Amendment immunity, and the State of Mississippi has not waived it. *Hines v. Miss. Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000) (Congress has not chosen to abrogate the states' immunity for suits under § 1983); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (Section 1983 does not abrogate Eleventh Amendment immunity); and MISS. CODE ANN. § 11-46-5(4)[6] (preserving Mississippi's Eleventh Amendment immunity).

DA Bramlett is the District Attorney for Madison County, Mississippi, and is, thus, a state actor. The United States Congress did not expressly abrogate the protection of the Eleventh Amendment to the United States Constitution for claims under Title 42 U.S.C. § 1983. Similarly, the State of Mississippi has not waived its Eleventh Amendment immunity. Accordingly, any claims of Matlock's against DA Bramlett for monetary damages cannot proceed and this court must dismiss such claims.

---

[6] (4) Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.
MISS. CODE. ANN. § 11-46-5 (West)

h. *Prosecutorial Immunity*

"Prosecutors are absolutely immune from liability for initiating prosecutions and other acts 'intimately associated with the judicial phase of the criminal process.'" *Johnson v. Kegans*, 870 F.2d 992, 996 (5 Cir. 1989) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "The office of public prosecutor is one which must be administered with courage and independence." *Imbler*, 424 U.S. at 423 (quoting *Pearson v. Reed*, 44 P.2d 592, 597 (Cal. 1935)). If a prosecutor were denied absolute immunity from civil suit, the mere threat of such litigation might "cause a deflection of the prosecutor's energies from his public duties" and lead him to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Id*. As a result, prosecutors are shielded by absolute immunity for challenged activities that are an "integral part of the judicial process," including the initiation of prosecution and presenting the State of Mississippi's case. *Id*. at 430-31. "Prosecutorial immunity applies to the prosecutor's actions . . . in carrying the case through the judicial process." *Hallcy v. Paxton*, 773 Fed. App'x 209, 210 (5th Cir. 2019) (Quoting *Boyd v. Biggers*, 31 F.3d, 279, 285 (5th Cir. 1994)).

Moreover, "[t]he prosecutor's immunity is not stripped even if he acted maliciously or in excess of his authority." *Collins v. New Orleans Police Dep't*, 247 F.3d 240 (5th Cir. 2001). "Absolute immunity shelters prosecutors even when they act 'maliciously, wantonly or negligently.'" *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987) (quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir.1985)). *See Workman v. Calogero*, 174 Fed. Appx. 824, 826 (5th Cir. 2006) (affirming dismissal based on prosecutorial immunity of RICO and civil rights claims). "Willful or malicious prosecutorial misconduct is egregious by definition, yet prosecutors are absolutely immune from liability for such conduct if it occurs in the exercise of their advocacy function." *Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003). Prosecutorial immunity is not

limited to advocacy before a court, but also includes the decisions of whether and when to file criminal charges. *Quinn v. Roach*, 326 Fed. Appx. 280, 292 (5th Cir. 2009).

DA Bramlett, as stated above, is the District Attorney for Madison County, Mississippi. As the District Attorney he is a prosecutor for the State of Mississippi. Matlock's Amended Complaint alleges that DA Bramlett indicted him, ignored exculpatory evidence, and eventually *nolle prossed* the charges brought against Matlock. The entirety of Matlock's Amended Complaint encompasses DA Bramlett's initiation of prosecution against Matlock and the presentation of the State of Mississippi's case against Matlock. DA Bramlett is shielded by absolute prosecutorial immunity from Matlock's claims.

      i.   *State Law Claims*

Matlock is unclear about whether he intends to maintain his state law claims against DA Bramlett. He has failed, however, to answer many of the arguments made by DA Bramlett, arguing generally, that his claims were adequately pleaded to defeat DA Bramlett's motion to dismiss. Matlock has, therefore, effectively conceded that his claims for monetary damages against DA Bramlett were dropped from his Amended Complaint, because he did not address any of DA Bramlett's arguments in his response. *See Estate of Boyd v. Pike County*, 2018 WL 1352175, at *6 (S.D. Miss. Mar. 15, 2018) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("plaintiff abandoned retaliation claim when she failed to defend claim in response to motion to dismiss"); *Vela v. City of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001) ("limitations defense not raised in response to motion for summary judgment or supplemental answer was abandoned"). This observation applies as well, to any of Matlock's remaining individual capacity or state law claims.

13

### 1. *Malicious Prosecution*

Matlock's claim for malicious prosecution is not embraced by the Mississippi Tort Claims Act (hereinafter referred to as "MTCA"). It is, therefore, subject to a one-year statute of limitations codified at § 15–1–35[7]. *See Univ. of Miss. Med. Cntr. v. Oliver*, 235 So.3d 75, 82–83 (Miss. 2017) (malicious prosecution claim falls outside of MTCA's waiver of immunity because it requires proof of malice which does not fall within the course and scope of the government actor's employment); *City of Mound Bayou v. Johnson*, 562 So.2d 1212, 1218 (Miss. 1990) (malicious prosecution subject to one-year limitations period of § 15–1–35). A cause of action for malicious prosecution accrues and the statute of limitations begins to run as soon as there is a termination of the challenged proceedings in the plaintiff's favor. *Joiner Ins. Agency, Inc. v. Principal Cas. Ins. Co.*, 684 So.2d 1242, 1244 (Miss. 1996).

DA Bramlett filed a motion to *nolle prosequi* the indictment against Matlock on May 3, 2019. Madison County, Mississippi, Circuit Court Judge John Emfinger signed the order granting the motion to *nolle prosequi* on the same date – May 3, 2019. Matlock filed his initial complaint in this lawsuit on June 4, 2020. One (1) year and thirty-two (32) days elapsed between the termination of the criminal proceedings against Matlock and the filing of the complaint which initiated this lawsuit. Matlock's claim for malicious prosecution, therefore, is time barred and must be dismissed.

---

[7] All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.
MISS. CODE. ANN. § 15-1-35 (West)

### 2. False Imprisonment

The MTCA provides the exclusive remedy for any claim based in tort against a governmental entity and its employees. MISS. CODE. ANN. § 11–46–7[8]. Matlock's state law claim for false imprisonment against DA Bramlett, therefore, is governed by the MTCA. *See Bell v. Miss. Dep't of Human Servs.*, 126 So.3d 999 (Miss. Ct. App. 2013) (applying MTCA to claim for false imprisonment); *Brooks v. Pennington*, 995 So.2d 733 (Miss. Ct. App. 2007) (same).

The MTCA provides a limited waiver of sovereign immunity for Mississippi and its political subdivisions. MISS. CODE ANN. § 11–46–5[9]. Numerous exceptions exist to this waiver, including those in MISS. CODE ANN. § 11–46–9[10]. Matlock's state law claim for false imprisonment

---

[8] (1) The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary.

MISS. CODE. ANN. § 11-46-7 (West)

[9] (1) Notwithstanding the immunity granted in Section 11-46-3, or the provisions of any other law to the contrary, the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived from and after July 1, 1993, as to the state, and from and after October 1, 1993, as to political subdivisions; provided, however, immunity of a governmental entity in any such case shall be waived only to the extent of the maximum amount of liability provided for in Section 11-46-15.

(2) For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

(3) For the purposes of this chapter and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment.

(4) Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.

Miss. Code. Ann. § 11-46-5 (West)

[10] (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

(a) Arising out of a legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;

(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;

(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;

(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;

(e) Arising out of an injury caused by adopting or failing to adopt a statute, ordinance or regulation;

(f) Which is limited or barred by the provisions of any other law;

(g) Arising out of the exercise of discretion in determining whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;

(h) Arising out of the issuance, denial, suspension or revocation of, or the failure or refusal to issue, deny, suspend or revoke any privilege, ticket, pass, permit, license, certificate, approval, order or similar authorization where the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked unless such issuance, denial, suspension or revocation, or failure or refusal thereof, is of a malicious or arbitrary and capricious nature;

(i) Arising out of the assessment or collection of any tax or fee;

(j) Arising out of the detention of any goods or merchandise by any law enforcement officer, unless such detention is of a malicious or arbitrary and capricious nature;

(k) Arising out of the imposition or establishment of a quarantine, whether such quarantine relates to persons or property;

(l) Of any claimant who is an employee of a governmental entity and whose injury is covered by the Workers' Compensation Law of this state by benefits furnished by the governmental entity by which he is employed;

(m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed;

(n) Arising out of any work performed by a person convicted of a crime when the work is performed pursuant to any sentence or order of any court or pursuant to laws of the State of Mississippi authorizing or requiring such work;

(o) Under circumstances where liability has been or is hereafter assumed by the United States, to the extent of such assumption of liability, including, but not limited to, any claim based on activities of the Mississippi National Guard when such claim is cognizable under the National Guard Tort Claims Act of the United States, 32 USCS 715 (32 USCS 715), or when such claim accrues as a result of active federal service or state service at the call of the Governor for quelling riots and civil disturbances;

(p) Arising out of a plan or design for construction or improvements to public property, including, but not limited to, public buildings, highways, roads, streets, bridges, levees, dikes, dams, impoundments, drainage channels, diversion channels, harbors, ports, wharfs or docks, where such plan or design has been approved in advance of the construction or improvement by the legislative body or governing authority of a governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval, and where such plan or design is in conformity with engineering or design standards in effect at the time of preparation of the plan or design;

(q) Arising out of an injury caused solely by the effect of weather conditions on the use of streets and highways;

(r) Arising out of the lack of adequate personnel or facilities at a state hospital or state corrections facility if reasonable use of available appropriations has been made to provide such personnel or facilities;

(s) Arising out of loss, damage or destruction of property of a patient or inmate of a state institution;

(t) Arising out of any loss of benefits or compensation due under a program of public assistance or public welfare;

(u) Arising out of or resulting from riots, unlawful assemblies, unlawful public demonstrations, mob violence or civil disturbances;

is barred by the MTCA's judicial action exemption, set out in MISS. CODE ANN. § 11-46-9(1)(a).

That provision states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>     (a) Arising out of a legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature.

MISS. CODE ANN. § 11-46-9(1)(a). DA Bramlett is not liable if his actions in indicting or prosecuting Matlock arose out of judicial action or inaction, so long as he acted within the scope of his employment or duties.

In *Newton County v. State ex rel. Dukes*, 133 So.3d 819, 826 (Miss. Ct. App. 2013), the Mississippi Court of Appeals looked to federal case law to analyze the scope of judicial action under § 11-46-9(1)(a). "The United States Supreme Court has explained that the first focus of

---

(v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care;

(w) Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning device, illumination device, guardrail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice;

(x) Arising out of the administration of corporal punishment or the taking of any action to maintain control and discipline of students, as defined in Section 37-11-57, by a teacher, assistant teacher, principal or assistant principal of a public school district in the state unless the teacher, assistant teacher, principal or assistant principal acted in bad faith or with malicious purpose or in a manner exhibiting a wanton and willful disregard of human rights or safety; or

(y) Arising out of the construction, maintenance or operation of any highway, bridge or roadway project entered into by the Mississippi Transportation Commission or other governmental entity and a company under the provisions of Section 65-43-1 or 65-43-3, where the act or omission occurs during the term of any such contract.

(2) A governmental entity shall also not be liable for any claim where the governmental entity:

    (a) Is inactive and dormant;

    (b) Receives no revenue;

    (c) Has no employees; and

    (d) Owns no property.

(3) If a governmental entity exempt from liability by subsection (2) becomes active, receives income, hires employees or acquires any property, such governmental entity shall no longer be exempt from liability as provided in subsection (2) and shall be subject to the provisions of this chapter.

MISS. CODE ANN. § 11-46-9 (West)

judicial immunity is whether the exercise of a judicial action is comparable to that of judges." *Newton Cnty.*, 133 So.3d at 826 (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993)). As discussed more fully above in connection with Matlock's constitutional claims, the United States Supreme Court has held that prosecutors are afforded absolute judicial immunity for acts "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Specifically, a prosecutor is immune from civil suit "in initiating a prosecution and in presenting the State's case." *Id.* at 431.

Matlock's Amended Complaint alleges, as stated above, that the offensive action or inaction by DA Bramlett all occurred during the course and scope of his duties as a prosecutor. Accordingly, DA Bramlett is afforded the protection of the MTCA's judicial action exemption and Matlock's claim for false imprisonment must be dismissed.

### 3. Individual Capacity Claims

Matlock's claims against DA Bramlett in his individual capacity must fail because DA Bramlett cannot be held "personally liable for acts or omissions occurring within the course and scope of [DA Bramlett's] duties." Miss. Code Ann. § 11-46-7(2)[11]; *Lefoldt ex rel. Natchez Reg'l Med. Ctr. Liquidation Tr. v. Rentfro*, 853 F.3d 750, 752 (5th Cir. 2017) ("The MTCA protects employees of a governmental entity from being held personally liable for acts or omissions that occur within the course and scope of their employment."), certified question answered, 241 So. 3d 565 (Miss. 2017).

---

[11] (2) An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense. MISS. CODE. ANN. § 11-46-7 (West)

Matlock's Amended Complaint features no allegations that DA Bramlett acted outside of his duties during the relevant time frame. Accordingly, this court must dismiss all state law claims against DA Bramlett in his individual capacity.

### 4. MTCA Notice Requirement

The MTCA requires that a person making a claim against a governmental entity or governmental employee must file a notice of the claim with the governmental entity ninety (90) days prior to filing an action in court. *See* MISS. CODE ANN. § 11-46-11(1)[12]; *see also Hobgood v.*

---

[12] (1) After all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity.

(2)(a) Service of notice of claim shall be made as follows:

    (i) For local governments:

        1. If the governmental entity is a county, then upon the chancery clerk of the county sued;

        2. If the governmental entity is a municipality, then upon the city clerk.

    (ii) If the governmental entity to be sued is a state entity as defined in Section 11-46-1(j), or is a political subdivision other than a county or municipality, service of notice of claim shall be had only upon that entity's or political subdivision's chief executive officer. The chief executive officer of a governmental entity participating in a plan administered by the board pursuant to Section 11-46-7(3) shall notify the board of any claims filed within five (5) days after receipt thereof.

(b) Every notice of claim shall:

    (i) Be in writing;

    (ii) Be delivered in person or by registered or certified United States mail; and

    (iii) Contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought, and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

(3)(a) All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after, except that filing a notice of claim within the required one-year period will toll the statute of limitations for ninety-five (95) days from the date the chief executive officer of the state entity or the chief executive officer or other statutorily designated official of a political subdivision receives the notice of claim.

(b) No action whatsoever may be maintained by the claimant until the claimant receives a notice of denial of claim or the tolling period expires, whichever comes first, after which the claimant has an additional ninety (90) days to file suit; failure to file within the time allowed is an absolute bar to any further proceedings under this chapter.

(c) All notices of denial of claim shall be served by governmental entities upon claimants by certified mail, return receipt requested, only.

(d)(i) To determine the running of limitations periods under this chapter, service of any notice of claim or notice of denial of claim is effective upon delivery by the methods statutorily designated in this chapter.

    (ii) The limitations period provided in this section controls and shall be exclusive in all actions subject to and brought under the provisions of this chapter, notwithstanding the nature of the claim, the label or other characterization the claimant may use to describe it, or the provisions of any other statute of limitations that

*Bordelon*, 2013 WL 2491061, at *9 (S.D. Miss. June 10, 2013). Claimants must file a notice of claim with a governmental entity's chief executive officer before filing a lawsuit. *See* MISS. CODE ANN. § 11-46-11.

In *Tallahatchie General Hospital v. Howe*, 49 So. 3d 86 (Miss. 2010), the Mississippi Supreme Court enforced a strict compliance standard regarding the proper recipients of the statutory notice of claim required by the MTCA. *Id*. at 92. The *Tallahatchie* court emphasized that it had a "constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation." *Id*. (quoting *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820) (Miss. 2006)). It further noted that "[t]he [State of Mississippi] Legislature's statutory use of the term 'shall' connotes a mandatory requirement." *Id*. The Mississippi Supreme Court recently reiterated its position in *Burnett v. Hinds Cty. by & Through Bd. of Supervisors*, 2020 WL 5834485, at *3 (Miss. Oct. 1, 2020). The *Burnett* court emphasized that "subsection 2(a) of Section 11-46-11, providing that the notice of claim 'shall' be filed with the political subdivision's chief executive officer, is mandatory with regard to [whom] the recipient must be." *Id*. Citing *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 91-92 (Miss. 2010). "If a complainant is and remains noncompliant with that mandatory provision, the lawsuit must be dismissed." *Id*. Citing *Howe*, 49 So. 3d 86, 92 (Miss. 2010).

Matlock's Amended Complaint alleges that "[p]rior to the institution of this action, Defendants were made aware that Plaintiff timely filed a notice of claim consistent with the MTCA

---

would otherwise govern the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter.

(4) From and after April 1, 1993, if any person entitled to bring any action under this chapter shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the action within the time allowed in this section after his disability shall be removed as provided by law. The savings in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years.

MISS. CODE. ANN. § 11-46-11 (West)

in December 2019." Matlock did not attach a copy of said notice of claim, nor has he responded to DA Bramlett's argument that he failed to comply with the MTCA notice requirement.

Accordingly, this court finds that Matlock has conceded DA Bramlett's argument and failed to comply with the MTCA notice requirement. *See Estate of Boyd v. Pike County*, 2018 WL 1352175, at *6 (S.D. Miss. Mar. 15, 2018) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("plaintiff abandoned retaliation claim when she failed to defend claim in response to motion to dismiss"); *Vela v. City of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001) ("limitations defense not raised in response to motion for summary judgment or supplemental answer was abandoned"). Matlock's claim for false imprisonment must be dismissed on this ground, as well.

### j.   *Matlock's Request to Amend his Complaint*

At the end of his cursory response in opposition to DA Bramlett's motion to dismiss, Matlock "requests to amend the complaint to address this further." Matlock fails to attach a proposed amended complaint and fails to explain what further amendments he intends to submit.

The local rules for the United States District Court for the Southern District of Mississippi provide that "[a] response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response." L.U.Civ.R. 7(b)(3)(C). Matlock's request, therefore, is not properly before this court.

Even were Matlock's request to file an amended complaint properly before this court, it would not be granted. Federal Rule of Civil Procedure 15 (a) provides that leave to amend must be "freely given when justice so requires." Fed. R. Civ. P. 15(a). *See also Stripling v. Jordan Production Co.*, 234 F.3d 863, 872 (5th Cir. 2000). A motion to amend should be granted unless there is a "substantial reason" to deny leave to amend. *Stripling*, 234 F. 3d at 872; *Herman*

*Holdings, Ltd. v. Lucent Technologies, Inc.*, 302 F. 3d 552, 566 (5th Cir. 2002). Granting leave to amend, however, is not required if the plaintiff already has pleaded his/her "best case." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

A plaintiff has pleaded his best case after he is "apprised of the insufficiency" of his complaint and has had an opportunity to make corrections. *Dark v. Potter*, 293 Fed.Appx. 254, 257 (5th Cir. 2008) (unpublished) (citing *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985) ("[T]he plaintiffs in this case have been apprised of the insufficiency of their conclusory allegations ... and have been afforded an opportunity to plead facts that would overcome the bar of *Imbler* immunity. We can assume, therefore, that the specific allegations of the amended complaint constitute the plaintiffs' best case ....")).

DA Bramlett campaigns that Matlock already has pled his best case. Instead of answering DA Bramlett's Motion to Dismiss Complaint [Docket no. 11], Matlock filed his Amended Complaint. Matlock apparently had been made aware of the alleged deficiencies with his initial complaint by DA Bramlett's Motion to Dismiss Complaint [Docket no. 11], and he filed his Amended Complaint to correct those deficiencies. This court, accordingly, finds that Matlock has already pled his "best case" and another amendment of his complaint would be futile.

## II.   CONCLUSION

**IT IS, THEREFORE, ORDERED that DA Bramlett's Motion to Dismiss Amended Complaint [Docket no. 15] is hereby GRANTED.**

**IT IS FURTHER ORDERED that all claims against DA Bramlett are hereby DISMISSED.**

**IT IS FURTHER ORDERED** that DA Bramlett's Motion to Dismiss [Original] Complaint [Docket no. 11] is **MOOT** and **DENIED AS SUCH.**

**IT IS FINALLY ORDERED** that Matlock's request to file an Amended Complaint is hereby **DENIED.**

**SO ORDERED** this the 27th day of September, 2021.

s/ HENRY T. WINGATE
**UNITED STATES DISTRICT COURT JUDGE**